17-3868 United States of America v. Tamela Lee Argument not to exceed 15 minutes per side. Mr. Madden, you may proceed for the appellant when you're ready. Good morning, your honors. Good morning. Jerome Madden, counsel for Tamela M. Lee. We'd like to reserve three minutes for rebuttal, your honor. All right. This appeal involves the conviction of former Summit County Councilperson Tamela M. Lee for violating honest services bribery and Hobbs Act prohibition against extortion. Ms. Lee received a five-year sentence for providing routine and innocuous constituent services to people within her district, including talking to a juvenile Judge Bailiff, a brief call, a brief conversation with a municipal court judge in Akron, a brief conversation on the telephone with the municipal prosecutor in Akron, and writing a recommendation letter or character letter to the IRS. It's important to note that this indictment was issued prior to the Supreme Court's McDonnell decision in 2016, but she was tried after that decision was made. After the McDonnell case was remanded, the Department of Justice dismissed the case, but it did not dismiss the indictment against Ms. Lee, although what she was being tried for, the allegations in the indictment, were no longer crimes. The specific issues before the court today are the court's failure to quash the indictment and the court's failure to grant Ms. Lee's motion for acquittal. You're saying the indictment was legally insufficient because what it charges is not a crime? Yes, your honor. It may have been a crime under the government's view of the law before McDonnell, but after McDonnell, clearly those indictments do not state a prima facie case. Pre-McDonnell, the Department of Justice took the position that any time an official under color of their position receives anything of value, including campaign donations, from a constituent in any way related to contacting another official about a question matter or a violation of the Honest Services Statute and the Hobbs Act. In McDonnell, Governor McDonnell, to help a constituent named Mr. Williams, who had this supplement called Anatta Block, hosted a party at the governor's mansion, invited people at the universities that could research this supplement for Mr. Williams, and that would call these officials and ask them how it's on behalf of Mr. Williams. Mr. Williams passed out $25,000 checks at these parties to do the research for the grants, and in return, the governor got $175,000 in loans, gifts, and other benefits. The Supreme Court unanimously reversed that conviction. It narrowed the definition of official act, so this is the definition of official act. It's much more narrow than it was when the indictment was issued, and the court said there are two ways the public official can commit an official act. First, the public official must exert pressure upon another official to decide a question or matter before them in a certain way, or responsibilities of the public official pursuant to custom practice, statute, or regulation provides advice to another public official on a question or matter before that official. So that was the narrowing of that definition, and the court did so for three reasons. First, it said it's vague without, unconstitutionally vague, because just about anything a public official says to any other public official can be turned into some kind of a crime if there was a campaign donation involved or anything like that. And the second was related due process, because public officials just frankly didn't know when they could call another public official about a matter or not. And the third was federalism concerns, which... The question is whether she exerted pressure or gave advice, right? So don't we just give that to the jury? You just say, did she exert pressure? Did she give advice? Yes, yes, your honor. We can now get to that point, but I can talk about the motion for acquittal now if you would like, but on the indictment, it has to assert facts that, if proven, would be a prima facie case of a violation. There is absolutely no allegations in the indictment that she pressured anybody or had the ability to pressure anybody. I mean, she's not the governor. She was a counsel in Summit County talking to a municipal judge and prosecutor in a brief call with a juvenile judge in Summit County and wrote a letter to the IRS. She had no leverage. She had no way to exert pressure on these people. Does the indictment claim that your client exerted pressure to get officials to perform official acts? No, no, your honor. There's no allegation of pressure at all. If you look at what... They may not have used the word pressure, but that she contacted these people for the benefit of certain individuals in return for being paid money. I mean, that's in the indictment. Exactly, your honor. This is what the Third Circuit just held in August in the FATA case. The case law is that indictments are to be liberally construed for purposes of determining sufficiency, so why is this indictment outside the pale in that regard? Because if you prove everything in that indictment, it's not a crime after McDonnell. That's the reason. What in the indictment is at variance with McDonnell? Because McDonnell didn't say that the governor couldn't be convicted based on the evidence that was proffered, just that the jury instructions were defective and sent it back for retrial, which never happened. Right, it dismissed the case. So we don't know if the governor would have been convicted on that evidence or not. That's right, your honor. You would have to redo the indictment and then you'd have to try the governor again, but you couldn't try the governor on the allegations in the indictment because those allegations weren't crimes. Well, I thought McDonnell said that the jury instructions were flawed. It did deal with jury instructions, your honor, but the reason it sent it back for trial is because the things that were alleged and proven were not crimes under McDonnell. Some of After McDonnell, you look at this indictment, there are no crimes alleged in this indictment. Well, wait a minute. The Supreme Court didn't say that Governor McDonnell didn't commit any crimes. They said that the jury instructions were flawed, so they just sent the case back to be retried with the proper instructions. And that's not quite so, your honor. McDonnell court said, look, what was proved at trial, some of it is not a crime. Some of it may be a crime, but the jury couldn't tell. The jury didn't know because they didn't have proper instructions whether things that are not crimes, those are things where there's no pressure exerted from the other, and so it sent it back. But after McDonnell, you can't allege things that the court said in McDonnell were not crimes in the indictment, and that's what this is a pre-McDonnell indictment. So those allegations, let's look at what she did. The allegations say she made a phone call and talked to the bailiff of the juvenile court. She never really, in the bail, said I'm not going to pass this on to the to the court. That was it. She supposedly sent an email to the to the juvenile court. No context at all what's in the email. Nothing. Nothing. That's it. That's the juvenile court. Well, wait a minute. Now, she doesn't have to accomplish the deed to be guilty. If she agrees and accepts payment and attempts to persuade a public person to perform an official act, that could be enough for a conviction, even if the public official didn't do anything to accomplish what the person was being requested to  We're talking about whether she committed an official act when she contacted the juvenile court. An official act for her can only exist where she pressured the juvenile court to do something, and she did not. The Third Circuit in August, after we filed our brief, said... In other words, you're saying she would have had to have been the individual supervisor or something of that nature? That would be the typical way, but not necessarily. I mean, if you had control over some aspects of their job, if it was part of the hierarchy, like the governor of the state, or you had some leverage, but just the contact... In fact, the Supreme Court says... What is the indictment supposed to say? You're saying that this indictment could never have said anything, right? Because she had no leverage over the prosecutor. She had no leverage over the IRS. She couldn't have done anything with the municipal court. So, they could have said all of this in the indictment, and it just wouldn't have been a crime, right? Okay. What they did say. Okay. And there's absolutely no... Even if they had said she exerted... Conclusory, just it said she exerted pressure on prosecutor Wilms or whatever to drop the charges against the two boys or whatever, that wouldn't have been enough? That may be different if she had some real leverage, but they don't even allege that. Okay, so you're saying that she... It really comes down to this question about the leverage. Do we have any cases on the leverage? Yes, there are three post-McDonnell cases, Your Honor. One was decided in August by the Third Circuit. That was a representative of the United States government, Mr. Fata case. Fata case, Your Honor. Okay. And the court made a distinction between contacting to support someone. In that case, the representative sent a letter of recommendation for someone who wanted to be an ambassador. And the court said... And the court found that those instructions were inadequate as well. And the court said you have to distinguish between what's permissible, which is a letter in support, and impermissible, which is pressuring this person to have some effect on their official act. But this... So they say, determining, for example, just how forceful a strongly worded letter of recommendation must be before it becomes impermissible pressure or advice is a fact-intensive inquiry that falls within the domain of a properly instructed jury. So was the jury not properly instructed here on whether she was... A, that doesn't seem to me to recognize a leverage. I mean, what leverage did he have over somebody who was going to appoint an ambassador? So I'm not sure it supports the leverage point. But B, as long as you use the words pressure or advice, I assume, in the jury instructions, why is that not okay? So here's the jury instructions, Your Honor. It's true in this case that there were post-McDonnell jury instructions. There were Sixth Circuit pattern instructions. And you signed off on those, right? The counsel signed off on them. But counsel also asked for an instruction on the definition of what constitutes pressure. And, yeah, and in the motion to dismiss and in the motion for acquittal, denied both times. And this is what it allowed the government to do. Here's what the government said in their closing argument after those instructions. Lee, quote, using her political influence to reach out to the her. Her name, her title, her influence, and her power were official acts. That is just false under McDonnell. The government said, using Summit County stationery, her officer letterhead, her official title, and writing a letter on behalf of someone she didn't know was an official act. That is not true under McDonnell. She, the fact, quote, the fact that the defendant is a member of the Summit County Council, has no control over the IRS, doesn't matter. That's not true under McDonnell. And so the fact that she couldn't order them to do anything doesn't matter. The goal was to try to influence. Well, that's just like the representative writing a letter in support of somebody's ambassadorship. That's influence, sure. If you're a representative, you reach out and have a constituent, of course you're trying to have some impact. But that's not pressure. That's what the Supreme Court was talking about. If that were true, then you're right back to boyfriend vagueness. Where is that? This person had not even the same government levels, except for the juvenile court, that she never really talked to. And they never put it in the evidence. What do you do with the word advice? I mean, okay, pressure, yeah, okay, maybe there's some leverage there that you can't really exert any pressure without. Right, Your Honor, and that is where I wanted to go to next. Provides advice is the second problem. And the government tried to argue that that should be, anytime somebody advises another public official, she was advising the prosecutor, advising the judge. That's not the treatment in McDonald. McDonald talks about Birdsaw, which is an old case, where the job of the agents was to advise this commissioner about whether people who were convicted should be leniently treated or not. Those agents were receiving money to give false recommendations. Their argument was, we can't be convicted because it wasn't our job under the statute. Supreme Court, that doesn't matter. If it's your job, I custom practice written or unwritten regulation, your role is to give advice. And so in McDonald, the Supreme Court addressed that issue because the government, strangely enough, was trying to argue that Birdsaw supports this really broad definition. The court said, no, we said in Birdsaw, it has to be part of your job. You're saying that what advice means under Birdsaw was a more formal relationship where I'm not giving you advice in the colloquial sense of giving advice, that those subordinates actually were paid as part of their job to advise their superiors? Exactly, Your Honor. By statute, by regulation, by practice. Are there any cases after Birdsaw that limit Birdsaw to that? Well, I mean, the Supreme Court in McDonald said, we held in Birdsaw that official action could be established by custom rather than by statute or written rule or regulation. That's not an invitation for any advice you give somebody as an official act. If that were the case, then the constitutional considerations of the  Your red light's been on for a while, Your Honor. May it please the Court, Elliot Morrison for the United States. Your Honor, the Supreme Court, Your Honors, the Supreme Court in McDonald spelled out exactly how the where, as here, a corrupt public official seeks to influence the official acts of another public official. But Ms. Lee argues that the Court's opinion implied without ever stating these additional requirements that you've just been discussing. The leverage when pressuring or the advisory role, a formal advisory role when giving advice. But how do you pressure somebody if you don't have any I'm curious about this because she, so obviously she's not, there is no official act on her part, right? We have to import this kind of, you know, influence somebody else's official act. So we're already one step removed. So in order for us to get there, she needs to pressure somebody. But how is she doing that if she has no sway at all over them? Right. There's no matter pending before her. She needs to either So your question is, how does she pressure without sort of a cudgel to hold over their head? Well, there's two responses to that. The first is that she doesn't have to actually exert any pressure at all. She has to agree to or attempt to. And in this case, what you have is an overwhelming evidence of that agreement to begin with. What if she's agreeing or attempting to do something she can't do? I mean, what here, she's a local official. The IRS probably doesn't care at all what she has to say. So she writes them a letter. What is she guilty of? She's pressuring the IRS. So in the IRS context, we would rely more primarily on advice. She's advising the IRS. She is giving advice, knowing and intending. I mean, are they going to take her advice? If you're not in the executive branch of the United States government, for example, are you in the Department of Treasury? I'm not sure I understand that word can be so broad. I mean, it could basically just be any constituent service, right? Anytime I call anybody to say, hey, would you mind looking into this noxious weed problem that my neighbor has? That's advice, isn't it? The difference there, Your Honor, is that you aren't doing that intending that they rely on the specific advice and having done it specifically in exchange for money, cash handed over, in this case, in parking lots, in convenience stores, and in many other contexts. And I think what Your Honor is getting at is the slippery slope argument that the defendant has raised in her brief. And she's relying on the same constitutional concerns, and I think Your Honor is, that the McDonnell court wrestled with. But the point here is McDonnell wrestled with those very concerns, and McDonnell itself said exactly what would constitute an official act in this circumstance. And it didn't leave open for further exploration additional requirements on top of what it stated. Indeed, what McDonnell stated was that if someone agreed to exert that pressure or give that advice in exchange for a thing of value, quote, that would be illegal. And Ms. Lee, in this case, the jury certainly was well within its discretion to find, as the finder of fact, that she agreed to do so and that she, in fact, did so, at least attempted to. Now, the government isn't, as you're pointing out, the government was shaking in their boots when they received a letter from Ms. Lee. Nonetheless, if you read the text of that letter, it's not about fear that an IRS official would have of Ms. Lee. It's about the weight that that IRS official would give that letter when she sends it on Summit County Council letterhead, signs it as Summit County Council District 5 representative, explains in detail why, based on what she's done in her position as a member of County Council, she believes that this family is worthy of credibility, that they have been an asset to the community, that they know full well that she has a no tolerance policy for shady business. Knowing full well that everything she said in that letter was completely false, because she did not know the person about whom she was writing. She didn't even know anything about his father, except for the fact that he'd recently agreed or recently had provided her with $200 in cash. But what does that have to do with whether that letter is advice or not under the statute? Well, it's not even under the statute. Where does that word come from? Advice comes from the Supreme Court, and the Supreme Court came up with that word specifically to address the constitutional concerns that the defendant is raising here and the defendant raised in McDonnell. They're trying to find a way to assure, based on using that word as opposed to other broader formulations that had been proposed, that when someone does actually give advice, and they don't just give advice, they make that offhand statement, but they know and they intend or intent, and here both apply, that that person will act on that advice. Indeed, in that letter that she writes to the IRS, she explicitly says at the end, I hope you will take this into consideration as you make a decision on this. Those are the closing words of that letter. She couldn't have made any more clear the compliance with the exact terms of McDonnell, obviously two years before McDonnell was written. In this case, however, I think it's important to take a look at the cases on which defendant relies for this purported requirement of pressure or a formal advisory role. And Your Honor hit it on the head exactly when you looked at FATA and you said, well, I don't know, I'm looking at FATA here, and FATA seems to say that's a jury issue. That's exactly what FATA says. That's a question for the jury. And FATA says nothing whatsoever about a formal advisory role or any pressure, any leverage or pressure that could be, sorry, any leverage or power that the public official, the corrupt public official has there. Now let's take a step back when we look at FATA and remember, who is the official that's being pressured in that case? President Obama. President Obama was not, there's no leverage that that the president of the United States in his appointment of an ambassador. Nonetheless, even when all that was at issue was writing letters, arranging meetings, and making phone calls, the Third Circuit didn't say, get out of here, that's not enough, directed verdict or judgment notwithstanding the verdict. What the Third Circuit said was exactly as Your Honor pointed out, this is an issue for the jury once they are properly instructed. So counsel's reliance on FATA is particularly ironic because what FATA actually holds is that what should have happened there is exactly what happened here. The jury should have been instructed with the language of McDonnell to ask whether there's a difference between simply reaching out and the impermissible version that the Supreme Court identified in McDonnell, which is exerting, attempting, or agreeing to exert that pressure. So what do you think that pressure means? I mean, what is, what does that mean to the government? I mean, how are you interpreting that word? Well, the first thing I think it means is it is a question to be put to the jury, but I don't mean to be flip. The, to answer the question sort of what in this context it means, it means pestering. It means something legally before we give it to the jury, right? I agree with that. You can't just give something to the jury that's not a crime. I mean, we have to establish that first. A judge would have to take those words and say, do I think the evidence here is sufficient for any rational fact finder to find that there has been an attempt or an agreement or an actual exertion of pressure? And in this case, I think we would focus more on the agreement. And that's especially given that, you know, the only case that the defendant has cited. So agreement meaning that just the mens rea, like I may have no leverage over somebody, but I actually intend to, I'm going to call president Trump tomorrow and I'm going to tell him he needs to do this. And I fully intend to do that, even though as a matter of fact, I have, there no leverage, there's no pressure I could exert at all. But if I agreed and had the guilty mind and took 500 bucks for that, I've committed a crime. Certainly. Yes. And I would say it actually goes even one step further, even under Evans and under McDonald explicitly, you don't need to have any intention to go forward, whether you believe you can or can't. What matters is that you accept that money. And McDonald is crystal clear on this. What matters is you accept that money knowing that that's what the other person expects of you or believing that that's what the other person expects of you. So you might in your own head say, I can't believe this guy is such a sucker that he's going to pay me to try and pressure the president of the United States, but I'm taking that money. That is a crime. That's exactly what McDonald says, because you're accepting it in return for what the Supreme Court has defined as an official act. And of course, it's important to distinguish between official acts that are official acts by virtue of the matter being pending before the corrupt official or by virtue of the matter being pending before another official, whom the corrupt official agrees to pressure or advise. And when you look at the cases... Where did that gloss come from? On the pressure? No, on official act. That it's not actually the person's official act, it's somebody else's official act. I mean, it's an old case. I can't say honestly, Your Honor, what the origin is of... But Congress has never actually enacted that requirement, right? It's just this gloss that we have on the statute. Right. Because the statute itself would be read naturally much more broadly. And so Supreme Court's gloss, as you say, is an attempt to rein in the statute somewhat from what otherwise would be an even broader construction. How would it be broader? It would cover official acts of other people under the terms of the statute? Well, for example, under the Hobbs Act here, she's extorting under color of official right. So the question is, what's she doing under color of official right? And there's a well-developed case law out there that defines what you do and don't do in your office. And if she's acting in her official capacity in any way, shape, or form, even if it's not on a matter that's directly before her, that would suffice. And as to her use of her office, don't take my word for it, take Ms. Lee's word for it. If you look at, I believe it's page ID 1178, she says expressly, do I do that, quote, in my official capacity? Yes. So there's no doubt that she's using her office in each of these instances. She says so herself. She says so in the letter to the IRS, for example, in my capacity of county counsel, she says. So she's using her office. And to your question, does the statute specifically say, including when someone attempts to pressure or which the Supreme Court has been careful in light of the constitutional concerns raised in McDonald to cabin? And the issue here is, did the evidence comply with what the Supreme Court says is required? And as your honor pointed out, every case to consider this has said that is an issue for the jury. Even in Rabbit, the 1978 Eighth Circuit case, which is the only case I'm aware of that has actually found any, that found that the evidence didn't establish a violation because of one of these additional requirements the defendant's proposing. Even in Rabbit, the court went on to say it would be sufficient if, for example, you were to lead that other person to believe that you did have some power. And that's exactly what happened here, especially in regards to the municipal prosecutor, where Ms. Lee told Omar, I'm speaking to the mayor, he's going to make sure she calls me back. So she made clear she had leverage. She could go above the municipal prosecutor's head to the mayor. Then when she wasn't getting where she wanted with the municipal prosecutor, she told Omar, I'm going to call the assistant chief of police. I'm going to go around her. So she is certainly in compliance with Rabbit, which is the only case the defendant has relied on that would suggest in any way, shape, or form that there's any sort of this Ercioli decision. Now, Ercioli is another somewhat interesting choice for her. Because in Ercioli, what the court was really troubled by there at page 295 is that she was, that the prosecution there had criminalized, quote, urging local officials to obey state law. And actually, the court there specifically said it would be different if she was, that public official was, quote, pressing on mayors a, quote, dishonest interpretation of the law or a false statistic. And that's exactly what Ms. Lee did here, over and over and over again. She reached out to judges and prosecutors and expressed a desire to be a character witness for defendants whose names she didn't know, let alone their character. She impressed upon Ms. Wilms a false notion of the facts that when, in fact, the assaulter in that case had hopped in his red Mercedes and chased after somebody who was running away from him for the second time and sent him tumbling head over heels over the hood of a Mercedes, that she said, actually, that he was just trying to run away. That that's what the person in the red Mercedes was doing. And then in the IRS, she again misled the IRS about her knowledge and made all kinds of false statements. So even Ercioli would as well agree with Rabbitt that even in this case, even if you impose that highest standard, that the facts here comply. Is there any way that she could have expressed her support in exchange for money and it not have been a crime? If she had, under McDonald, what they say is there's a difference between public expressions of support and these attempts to pressure or advise. But I do think that there's certainly a way that she could have had legitimate constituent concerns and express them in a proper way. But if she's doing it for money under McDonald, in exchange for money, for cash, right? If she's being paid $200 in a parking lot of a nightclub and told, go influence this judge. No, there's no if she has that mens rea. Express some support, write a letter to the state department for me or something. Yes. Express my support. Is that always going to be a crime? If all of the other elements are met. So what we have here is quid pro quo. What if it's for a campaign contribution and not cash in the parking lot? So in the campaign contribution, I see my time is up. May I answer your honor? Yes. In the campaign contribution context, the Supreme Court has an additional limiting requirement, which is that there must be an express and specific quid pro quo. So if, for example, you said, I am giving you this campaign contribution so that you will express public support for so on, right? A very specific thing. And then that public official goes on to do that would be a crime under, I believe it's McNally. But the issue here is light years away from that. We don't have to get anywhere near what happens with campaign contributions because the record here is that these quote unquote campaign contributions were acknowledged between everyone involved, that they were not anything of the sort, that they were going directly into her personal bank account, that it was money that was being paid to her for her to pay her bills for her personal use. And for those reasons, you don't have to be concerned about the sort of far reaches of these prosecutions because we're so far away from that. There are no other questions. I'll take my seat. I feel like I'm in a parallel universe. Let's take campaign financing charges. She was not charged with campaign finance violations specifically. It has nothing to do with this case. Quid pro quo. Governor McDonald was doing these things for his constituent and he was getting money. And that's not a crime. So quid pro quo is a red herring. Well, we don't know that because he was never retried. I mean, that's not a good thing to say. The Supreme Court made explicitly clear that some of the things that he did were not criminal unless they could prove pressure. There wasn't any proof of pressure. In the Silver case, writing a letter of recommendation to somebody, he controlled the finances of the organization. That was not pressure. In the Reback case, it's a perfect example of what advising really is when you're the executive director and you're making advice on contracts through the board of directors and you're taking money on the side. That's illegal. Now let's look at what she actually said, what she promised to do. What Omar said is call the juvenile judge and Judge Larson and tell them that he's a good kid. They're really good kids. She said, okay. That's what she promised to do. That's it. In talking to the prosecutor, when she talked to her, she told her, these boys were wrong. They're in the wrong. All I'm calling about is why the 28-year-old wasn't charged too. That's what she told Omar she would do. Right. She's looking for a specific result. She's looking for the charges to be brought against the guy. She's using her official position and intending a specific outcome in exchange for money. That's not problematic. She's not asking, telling a prosecutor to do anything. She's just saying, I was in the 28-year-old charge. That wouldn't mean that the charges would be dropped against the nephews of Omar, but have no impact at all. The only reason she brought that up is because it might lessen the charges against the nephews. By the way, when she talked to the prosecutor, it was already resolved. There was some goal to the phone call. Of course. Like the Supreme Court. Excuse me, I went over the wrong page. Here we go. So the basic contract compact on a Republican government assumes the government officials will hear from the constituents and act appropriately. Setting a meeting, talk to another official, organizing an event, or agreeing to do so without more is not the for constituents. Contact other officials on their behalf and include them in events all the time. That's what the Supreme Court is going to get. It's trying to stop the criminalization of politics. Because under the government's definition, anything that you do, if you've got some donation or money, you're going to do it for five years. It's absurd. So we'd ask for the conclusion of our brief. Thank you. Very good. The case is submitted.